IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RR COMPANY OF AMERICA, LLC, ) | CASE NO. 1:19 CV 539 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | |
| BISHOP QUEEN, LLC, ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Defendant. ) | |

This matter is before the Court on the Motion of Plaintiff RR Company of America, LLC ("RR") for Award of Attorneys Fees and Costs. (ECF #101). RR is the prevailing party in this action as the Court granted RR's Motion for Summary Judgment on its Complaint for Breach of Lease and Specific Performance and on Defendant's Counterclaims. (See ECF #98) In addition, the Court determined that RR was entitled to Attorneys Fees and court costs under Section 22 of the Lease between the parties and requested that RR file its motion for attorneys' fees and costs, along with supporting documentation. (ECF#98 at 19) RR filed the pending Motion for Attorneys Fees and Costs along with supporting documentation. Defendant Bishop Queen LLC ("BQ")filed a Brief in Opposition (ECF #105) and RR filed a Reply Brief in Support. (ECF #107)

## ANALYSIS

Section 22 of the Lease between the parties provides that "[i]n the event of any litigation between the Landlord and Tenant arising out of this Lease, the unsuccessful party in such

litigation shall pay the court costs and reasonable attorneys' fees of the prevailing party." (ECF #1, Ex. 1, §22) Having already determined that RR is the prevailing party under this litigation arising out of the Lease between the parties, the final element for the Court to decide is what "reasonable attorneys' fees" and court costs BQ shall pay. The Ohio Supreme Court advises that "[t]he beginning point for determining an award of attorney fees is the reasonable hourly rate multiplied by the number of hours worked, a calculation that is sometimes referred to as the 'lodestar.'" *Phoenix Lighting Grp., L.L.C. v. Genlyte Thomas Grp., L.L.C.*, 160 Ohio St. 3d 32, 33 (2020). The lodestar calculation " 'provides an objective basis on which to make an initial estimate of the value of the lawyer's services.' " *Id.* at 35., *quoting Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). There is a strong presumption that the lodestar is the proper amount for an attorney fee award. *Id.* at 38. However, after a court calculates the lodestar, the court may modify that calculation, either upward or downward, by applying the factors listed in Rule 1.5 of the Ohio Rules of Professional Conduct:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers

      performing the services;

    (8) Whether the fee is fixed or contingent.

Here, RR's submissions document that its lawyers and paralegals assigned to this matter billed 1,587.30 hours to this litigation from February 2019 through August 31, 2021. The standard rates for each timekeeper are listed, as well as the hours worked by each timekeeper with a description of the work performed. (ECF #101, Ex. 1A, B) The rates of the timekeepers range from $702.40 per hour for senior litigation partner Fogarty, $319.05 per hour for junior litigation partner McElfresh and $230.68 for paralegal Bystricky. In all, RR seeks $582,592.50 in attorneys' fees (representing a lodestar calculation of a $367.03 blended hourly rate times 1,587.30 hours of time spent).

BQ argues that RR's Motion for Attorneys' Fees should be denied as unreasonable because while RR prevailed on the merits, it failed to obtain an award of damages. *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992). In *Farrar*, the Supreme Court reviewed when and whether a civil rights plaintiff is entitled to an attorneys fee award under §1988 when the plaintiff received only a nominal damage award in his §1983 action. The Court noted that a nominal damages award that is a "technical" or "insignificant" victory does not affect the plaintiff's prevailing party status, but does bear on the propriety of fees awarded under § 1988 because the critical factor in determining a fee award's reasonableness is the degree of success obtained, since a fee based on the hours expended on the litigation as a whole may be excessive if a plaintiff achieves only partial or limited success. *Id.* at 104 *citing Hensley v. Eckerhart*, 461 U.S. 424, 436.

This case does not involve a civil rights claim or a fee award under §1988. Rather, the fees sought in this contract action were awarded under §22 of the Lease between the parties. Moreover,

RR did not receive a "technical" or "insignificant" victory. The main issue before the Court in this action has always been whether the Lease and Amendment permitted RR to tie in to the sanitary sewer located in the adjacent landlord space. RR filed this action after BQ blocked its access to the adjacent landlord space preventing the tie in to the sanitary sewer. RR sought a TRO, and a preliminary and permanent injunction enjoining BQ from obstructing or blocking RR's access to the sanitary sewer line in the adjacent landlord space. RR also sought a declaratory judgment declaring RR's rights under the Lease including that RR has the right to connect to the sanitary sewer line in the adjacent landlord space. RR obtained the declaration it sought. The Court held hearings on the TRO and after testimony was taken, BQ agreed to remove the blockade to the sanitary sewer allowing RR to complete the tie in. Despite permitting the tie-in, BQ filed counterclaims asserting, among other claims, that RR's tie in to the sanitary sewer line breached the Lease. BQ sought money damages and the issuance of a permanent injunction requiring RR to abate and remediate the unauthorized use of BQ's property and prohibiting RR from continuation of the unauthorized use.[1] The Court entered summary judgment in favor of RR on all but one portion of one of BQ's counterclaims. That remaining claim was dismissed without prejudice. Thus, while RR's Complaint requested damages for BQ's breach of the Lease, the most important element was the declaration of RR's rights under the Lease and Amendment allowing RR and its tenant to connect to the sanitary sewer line, complete the permitting process and construction, and

---

[1] BQ also claims that RR needlessly continued this litigation beyond the point where BQ permitted it to tie into the sanitary sewer. However, as noted above, BQ continued to allege that RR's tie in to the sanitary sewer constituted a breach of the Lease and sought remediation and damages. While RR certainly pursued this action aggressively, BQ's actions were the cause for RR's litigation decisions.

to permit peaceable and quiet possession of the leased premises. Thus, in this case, the lack of any damage award does not lessen Plaintiff's victory or reduce it to a "technical" or "insignificant" victory. Accordingly, RR's attorneys' fee request will not be denied as unreasonable.

In the alternative, BQ asserts that the Court should reduce the fees awarded to RR because: (1) RR block billed approximately 51 hours; (2) RR seeks fees on the claim on which it did not prevail– *i.e.*, the roofing claim that was dismissed without prejudice; (3) a comparison of RR's fees in this case to those in other cases shows that RR's fees here are unreasonable; and (4) RR's fees relative to the TRO should be disallowed because the motion was unnecessary and was eventually denied.

(1) BQ contends that RR included 50.9 hours of block billed time which should be excluded from any award of fees because the Supreme Court of Ohio has stated that "it will no longer grant attorney-fee applications that include block-billed time entries." *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 297- 298 (2018). The Court noted that block billing, *i.e.*, lumping multiple tasks into a single time entry, is disfavored because there is no way to assess whether the time spent on each of the lumped tasks was reasonable. *Id.* Courts have not, however, treated *Rubino* as an absolute bar to the submission of block billed time. In *Christen v. Continental Enterprises, Ltd.*, 154 N.E.3d 1192, 1203 (Ct. App. 2020), the Eighth District Court of Appeals held that an award of block billed fees in that case did not constitute an abuse of discretion because the block billing that occurred would not have prevented the trial court from determining that the time spent in pursuit of the security deposit was reasonable. While all of the highlighted "block" billing entries appear to represent time spent on tasks related to this litigation, it is impossible, without further explanation, to determine if the time spent on any task was unreasonable. RR does

not offer any evidence to help make this determination. Instead, RR claims that four of the entries that BQ alleges are block bills are not. Rather than block billing entries, RR contends that four of the entries totaling 6.5 hours, are "entries billed for time spent on multiple tasks all relating to the same work product."(ECF #107 at 9) Further, RR notes that the fact that BQ only points to 50.9 hours out of 1,587.30 billed demonstrates that RR's counsel was diligent in recording its detailed task-based hours, thus, no reduction is warranted. Overall, it appears that RR's counsel's billing practices were appropriate to convey the description of the work performed in the time billed. However, as the Court is unable to determine whether the time billed on the block bill entries was reasonable, 44.4 hours will be deducted from the total hours billed.[2]

(2)    BQ asserts that RR did not prevail on the counterclaim related to LaSalle's roof, thus the 36.4 hours and $119.66 in costs spent on that issue should be deducted. BQ's counterclaim for breach of contract alleged that RR committed six breaches of the lease which entitled BQ to damages, costs, attorney fees and termination of the lease. (ECF #38, ¶¶52-63) The breach of contract claim involving the roof damage to the neighboring tenant LaSalle was dismissed without prejudice because the claim was being addressed in a lawsuit in the Lake County Court of Common Pleas where LaSalle had sued both RR and BQ regarding the roof damage. RR has since filed the dismissal notices from the Lake County Court showing that LaSalle dismissed the roof claims against all parties. (ECF #107-1,2) Accordingly, RR asserts that it prevailed on the roofing claim because it was dismissed without any liability assessed to either side. In as much as the roofing claim was dismissed by this Court and by the state court, it is fair to

---

[2] The 44.4 number represents 50.9 minus the 6.5 hours that RR asserts were not block billing entries.

say that RR prevailed on the claim. Moreover, as BQ raised the roof issue in this litigation, RR was required to spend the time necessary to address the issue, thus no deduction of fees or costs is merited.

(3)  BQ asserts that RR's rates were too high based upon the difference in RR's blended rate and the blended rate in *Integrity Energy v. Hunter, et al.*, 2021 WL 2808689 (July 6, 2021). In *Integrity Energy*, a case involving a commercial contract dispute regarding the enforcement of a settlement agreement, this Court found that a blended rate of $315 per hour x 2,392 hours for a total fee award of $753,667 was reasonable. Here, RR's blended rate is $367.03 per hour. While the billing rates of the senior attorneys in this matter and in *Integrity Energy* are different, BQ does not offer any specific objection to any of the billing rates charged by RR's attorneys in this matter.

"A reasonable hourly rate is the prevailing market rate in the relevant community, *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "[T]he prevailing market rate can often be calculated based on a firm's normal billing rate because, in most cases, billing rates reflect market rates, and they provide an efficient and fair short cut for determining the market rate." *Phoenix Lighting Grp., L.L.C. v. Genlyte Thomas Grp., L.L.C.*, 2020-Ohio-1056, 160 Ohio St. 3d 32, 35, 153 N.E.3d 30, 35 citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir.1993). RR asserts that the rates charged by its counsel here were derived by senior management at Hahn Loeser & Parks LLP "based on numerous market-driven factors, including amounts charged by similar firms for lawyers and paralegals of comparable experience and reputation," and those rates "are consistent with prevailing-market rates for attorneys and paralegals of comparable experience and expertise." (ECF #101-1, Fogarty Dec. ¶¶

32-33) The Court finds that the hourly rates billed by RR's attorneys and paralegals on this matter are within the customary hourly rates of practitioners with similar credentials and experience who regularly appear before the Court. The Court considered the breadth of work, level of complexity, and skill needed to competently perform the legal services required in this matter, and finds the rates reasonable.

(4) Finally, BQ argues that the 254.50 hours billed on the motion for temporary restraining order could have been avoided had RR simply provided BQ with the documents and information it requested prior to the lawsuit. Whether the parties could have/should have worked out their issues prior to the filing of the lawsuit is immaterial. Moreover, as was carefully detailed in the Court's opinion granting Plaintiff's motion for summary judgment, BQ's actions lead to the filing of this lawsuit as well as to the continuation of the lawsuit after the sewer tie in was complete. While RR's motions for a temporary restraining order and for a preliminary injunction were ultimately denied as moot, it was only through the work put into briefing the issues and two days of hearings on the motions that caused BQ to agree to let the permit process proceed and to connect to the sewer if the plumbing inspector determined the connection had a minimal effect on the balance of the shopping center. Even after the connection was accomplished, BQ continued to assert that the tie in breached the Lease and Agreement and should result in damages and the termination of the 99 year lease. The time spent on the motions for a temporary restraining order and for a preliminary injunction all related to the main issue in this case and the specific relief sought and obtained by Plaintiff. As such, the time spent was reasonable.

The Court finds that the fees requested by RR are reasonable under the lodestar analysis and the Rule 1.5 factors, with the exception of the 44.4 hours attributable to block billing. Thus,

$367.03 x (1587.3-44.4 = 1542.9) hours equals a total fee award of $566,290.59. RR also seeks an additional $16,500 in fees incurred to prepare its application for fees and costs. BQ has not objected to the fees requested to prepare RR's application for fees and costs. Accordingly, $16,500 will be added to the fee award.

### Costs

RR has requested court costs in the amount of $17,904.23 under Section 22 of the Lease and 28 U.S.C. § 1920. BQ only objects to $119.66 in costs relevant to the roofing counterclaim and $1,344.97 relevant to the motion for temporary restraining order. BQ argues that these costs are unreasonable for the same reason the fees requested on these issues were unreasonable. As noted above, the Court has determined that the fees sought relative to these issues are reasonable. As BQ offers no other reason why these two items should not be taxed as costs, its objection is overruled. Otherwise, the costs sought by RR are appropriately taxed as costs under 28 U.S.C. § 1920 and shall be awarded.

### CONCLUSION

For the reasons set forth above, RR is awarded attorney fees in the amount of $582,790.59 and costs in the amount of $17,904.23.

IT IS SO ORDERED.

DATED: February 14, 2022

DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE